# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

CHARLOTTE BRADEN,

    Plaintiff,

v.                                          Case No: 8:13-cv-535-T-30EAJ

AETNA LIFE INSURANCE COMPANY
and FEDERAL EXPRESS
CORPORATION,

    Defendants.

## **ORDER**

*Background*

THIS CAUSE comes before the Court upon the Plaintiff's Motion for Summary Judgment (Dkt. #25) and Defendants' Response in Opposition (Dkt. #28) and Defendants' Motion for Summary Judgment (Dkt. #26) and Plaintiff's Response in Opposition (Dkt. # 27). It is the Court's conclusion that the Defendants' Motion should be granted and Plaintiff's Motion should be denied.

*Background*

Plaintiff, Charlotte Braden, brought this claim under the Employee Retirement Income Security Act. 29 U.S.C. 1001, *et. seq*. ("ERISA") challenging Federal Express Corporation's ("FedEx") denial of a lump sum payment of benefits under FedEx's Long Term Disability ("LTD") Plan (the "Plan"). The Plan provides that if a disabled employee sustains injuries that result in "permanent restrictions and limitations" as defined in the Plan, and cannot secure another position within the company with those

restrictions, then the employee is entitled to receive a lump sum payment of the remainder of the LTD benefits upon termination.

Braden was a FedEx employee covered under the Plan. FedEx initially paid Braden short term disability benefits from August 24, 2010, through February 21, 2011. Braden's disability was based on a work related injury including herniated cervical discs with nerve root impingement and radiculopathy. At the time of her disability, Braden held the position of Station Manager. The position required the ability to lift 75 pounds and maneuver packages over 75 pounds with assistance; duties which she could no longer perform due to her injury. Once her short term benefits expired, she began to receive LTD benefits since she continued to have the same disability.

On February 25, 2011, Deborah A. Lamp, a HCMP Advisor for FedEx, sent Braden a letter with the subject "Return to Work with Permanent Restrictions." The letter stated that "[a] review of your medical status indicates you have reached maximum medical improvement and have been released to return to work with permanent restrictions of no lifting over 10 [pounds] and no overhead reaching." Further, it informed Braden that she had 90 calendar days to seek a position within FedEx for which she could perform the essential functions. It also gave her the option to resign within the 90 days and receive a "lump sum payout of your remaining disability benefits." (AR-0026 and 28). [1]

Braden applied for one position which she did not secure. On August 26, 2011, FedEx notified Braden that she was terminated. On September 13, 2011, Aetna Life

---

[1] References to the Administrative Record bear the designation (AR- _____ ).

2

Insurance Company ("Aetna"), the Plan's Claims Payment Administrator, notified Braden that since she was no longer a full time employee of FedEx she no longer qualified for LTD benefits and would no longer receive payments. (AR-0004). The letter did not mention anything regarding Braden's status as to her permanent restrictions and limitations; the termination was the sole basis for the denial. Plaintiff timely appealed the denial, specifically appealing her entitlement to a lump sum payment for the remainder of her 24 month occupational LTD benefits pursuant to the Plan provisions governing permanent restrictions and limitations.

On April 2, 2012, Aetna upheld the denial based on Braden's termination from FedEx and it also noted that Braden's permanent restrictions and limitations "were imposed by Worker's Compensation and not your client's own physician. If your client's provider had imposed permanent restrictions and limitations which Aetna found to be appropriate, then your client would have been eligible for a lump sum payment...." (AR-0001).

*Discussion*

Braden moves for summary judgment in her favor arguing that the plan provisions provide for a lump sum payment equal to the remainder of her 24 month LTD benefits since Braden was a disabled employee with permanent restrictions and limitations who was terminated after she was unable to secure an alternate position. The Defendants argue that the administrative record contains no objective medical evidence to support the conclusion that Braden had permanent restrictions and limitations, and therefore, Aetna properly denied her claim. FedEx brings its summary judgment Motion arguing that the decision to deny Braden's request was legally correct, and not arbitrary and capricious

because there is substantial evidence in the administrative record to support the denial. Further, the Defendants argue that Braden failed to join an indispensable party, namely the Plan itself, and therefore Defendants are entitled to judgment as a matter of law. FedEx further argues that Aetna is not an appropriate party to this action, and therefore should be dismissed.

### I. Legal Standard

ERISA benefit denial cases present courts with unique considerations, therefore the standard summary judgment considerations do not apply. *Hert v. Prudential Ins. Co. of Am.*, 650 F. Supp. 2d 1180 (M.D. Fla. 2009). "Where a decision to grant or deny benefits is reviewed for abuse of discretion, motion for summary judgment is merely the conduit to bring the legal question before the district court and usual tests of summary judgment, such as whether a genuine dispute of material fact exists do not apply." *Id*. (citing *Crume v. Metropolitan Life Ins., Co.*, 417 F.Supp. 2d 1258, 1272 (M.D.Fla. 2006)). Instead, the Court asks whether the aggregate evidence, viewed in the light most favorable to the non-moving party, supports a rational determination that the plan administrator acted arbitrarily in denying the claim for benefits. *Id*.

For a court reviewing a plan administrator's benefits decision, the test is to:

(1) Apply the *de novo* standard to determine whether the claim administrator's benefits-denial decision is "wrong" (i.e., the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.

(2) If the administrator's decision in fact is "*de novo* wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.

(3) If the administrator's decision is "*de novo* wrong" and he was vested with discretion in reviewing claims, then determine whether

"reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).

(4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.

(5) If there is no conflict, then end the inquiry and affirm the decision.

(6) If there is a conflict, the conflict should merely be a factor for the court to take into account when determining whether an administrator's decision was arbitrary and capricious.

*Blankenship v. Metro. Life Ins. Co.*, 644 F.3d 1350, 1355 (11th Cir. 2011) cert. denied, 132 S. Ct. 849 (U.S. 2011) (citing *Williams v. BellSouth Telecomms., Inc.*, 373 F.3d 1132, 1137–38 (11th Cir. 2004), *overruled on other grounds by Doyle v. Liberty Life Assurance Co. of Boston*, 542 F.3d 1352 (11th Cir. 2008)). As to the sixth step in this analysis, the Eleventh Circuit eliminated the heightened standard of review applicable when a conflict of interest is present. *Doyle*, 542 F.3d at 1360. A pertinent conflict of interest exists where the ERISA plan administrator both makes eligibility decisions and pays awarded benefits out of its own funds. *Id*. Even where a conflict of interest exists, courts still "owe deference" to the plan administrator's "discretionary decision-making" as a whole. *Id* (internal quotations omitted). The claimant bears the burden of proving that he is entitled to benefits. *Horton v. Reliance Standard Life Ins. Co.*, 141 F.3d 1038, 1040 (11th Cir. 1998).

As an initial matter, FedEx argues that neither it nor Aetna is a proper party to this action, and that the Plan itself is the only proper party. The Court concludes that FedEx is an appropriate Defendant in this case since 29 U.S.C. §1132(a)(1)(b) "confers a right to sue the plan administrator for recovery of benefits. " *Rosen v. TRW, Inc*. 979 F. 2d 191

(11th Cir. 1992); *Garren v. John Hancock Mut. Life Ins. Co.*, 114 F.3d 186 (11th Cir. 1997) (employer, as plan administrator, was proper party defendant, rather than insurer which did not exercise any discretion, responsibility or control over administration of plan.) It is undisputed that FedEx is the plan administrator in this case, and it is therefore an appropriate Defendant. There is no supporting law or facts to find that Aetna is an appropriate Defendant as the agent of FedEx and claims paying administrator; therefore Aetna should be dismissed as a Defendant.

### a. FedEx's decision to deny the lump sum LTD benefits was "wrong"

After reviewing the administrative record, the Court concludes that FedEx's decision to deny the lump sum payment of the LTD benefits to Braden was *de novo* wrong. The record establishes that there was medical evidence to suggest that Braden had permanent restrictions and limitations. FedEx, through its agent Deborah A. Lamp, HCMP Advisor, sent the Plaintiff a letter on February 25, 2011, specifically stating that their review of her medical status reveals that she has permanent restrictions. Aetna's internal notes in the administrative record show that it recognized that Dr. Maser placed Braden on permanent restrictions of lifting or carrying a maximum of 10 pounds and no overhead reaching, although he is not her treating provider. (AR-0129). Further, both Dr. Jackson, Braden's treating physician and orthopaedic specialist, and Dr. Maser, an orthopaedic surgeon, indicated that Braden reached maximum medical improvement. Both doctors also indicated on the Florida Worker's Compensation Uniform Medical Treatment/Status Reporting Forms that she had a "Permanent Impairment Rating (whole body)" of 5% and 7%. (AR-014-15, AR-0023-24). Dr. Maser also specifically indicated

in section 23 of the form that Braden could return to work with the following restrictions: no lifting floor to waist over 10 pounds, no lifting overhead more than 10 pounds and no overhead reaching. Therefore, in spite of FedEx's argument that Braden had no objective medical evidence suggesting permanent restrictions, the administrative record does contain evidence that at least one doctor put her on permanent restrictions.

### b. FedEx's decision to deny the lump sum benefits was not arbitrary and capricious

The next inquiry is whether the administrator was vested with discretion in reviewing the claims. The Plan does provide the "Fiduciary" with discretion and both parties agree that the arbitrary and capricious standard applies. *Slomcenski v. Citibank*, 432 F.3d 1271 (11th Cir. 2005) (decision by a plan that gives discretion is reviewed under arbitrary and capricious standard.) Therefore, the Court must determine whether reasonable grounds supported the denial.

The record shows that Braden was covered under the LTD plan and received benefits for an Occupational Disability as defined in the Plan until August 26, 2011. FedEx terminated Plaintiff's employment because she was not able to return to work after her medical leave of absence. Braden's treating physician Dr. Jackson was of the opinion on November 16, 2010, that Braden reached maximum medical improvement as of March 1, 2010 and that Braden could "return to activity as tolerated" but with the following restrictions: no lifting over 10 pounds, twisting, overhead reaching or sitting more than 60 minutes without a five minute break, or lifting with her left arm. (AR-00015). The doctor diagnosed her with "displacement of cervical intervertebral disc without myelopathy" and "brachial neuritis or radiculitis NOS." *Id*. She had a 5%

7

"permanent impairment rating (body as a whole)" at this point. *Id*. On December 21, 2010, Dr. Jackson issued another report stating substantially the same information and with instructions to Braden to continue home exercises and use of a TENS unit and cervical traction unit. (AR-00016-18).

In a February 16, 2011, Florida Worker's Compensation Form completed by Dr. Maser, the doctor noted that Braden could not perform activities even at a sedentary level, and that her "permanent impairment rating (body as a whole)" increased to 7%. (AR-00023-24). On February 22, 2011, Braden transitioned to LTD benefits. Aetna approved Braden for LTD benefits through March 31, 2011. On April 14, 2011, Aetna's internal notes indicate that Plaintiff was contacted and informed that Aetna did not approve Braden for permanent restrictions and limitations. (AR-0130-131). Aetna confirmed that "Dr. Maser placed the permanent restrictions but that he [was] not her treating provider." On August 26, 2011, FedEx sent Braden a termination letter and notified Aetna of the same. (AR-0029-30).

On September 1, 2011, Dr. Jackson sent a report indicating that Braden's restrictions were not permanent. (AR-0159-61). On September 13, 2011, Aetna sent an initial denial letter notifying Braden that her LTD payments ceased on August 26, 2011, because she was no longer a full time employee at FedEx. (AR-0004-5). On March 12, 2012, Braden's attorney requested an appeal. The Final Denial Letter indicated that Aetna terminated the benefits because she was no longer a full time employee pursuant to Section 2.2(b) of the Plan which states that "coverage will terminate as to any Covered Employee...the date he ceases Permanent Full-Time Employment, including the date of his retirement or death." (AR-0001). Further, Section 3.3(b)(6) of the Plan states the

following: "Cessation of Benefit: The Disability Benefit shall cease to be paid to a Disabled Covered Employee when the earliest of the following events occur with respect to such Employee: the termination of his Employment Status...." The letter further stated that since her primary provider did not impose the permanent restrictions and limitations, that Aetna would not accept the diagnosis as qualifying her for the lump sum payment.

The Plan allows Aetna, as the claims paying administrator, to determine whether the employee has met the definition of permanent occupational restrictions and limitations, which the Plan defines as "those medical conditions which, within a reasonable degree of medical certainty, permanently prevent a Disabled Covered Employee from resuming his regular occupation." Section 3.3(c) of the Plan states that

> (c) Lump Sum Payment. If a Disabled Covered Employee has Permanent Occupational Restrictions and Limitations, *as determined by the Claims Paying Administrator*, which prevent him from returning to his regular occupation and if he is unable to find an available job with the Company within the time stated in the Company's applicable personnel policies and if the Company is unable to reasonably accommodate him, as required by applicable personnel policies and law, then such Covered Employee, upon the termination of his Employment Status, shall be paid a Lump Sum Present Value (not to be offset by amounts earned from employment with someone other than Employer) equal to the remaining benefits available under the Plan for an Occupational Disability, but excluding in any case the value of any Pilot and Crew Member Supplementary Disability Benefit. The foregoing shall not prevent such Covered Employee from voluntarily resigning his position prior to the expiration of the period available for placement in another position, in which case the Lump Sum Present Value Payment shall be made at that time.... (emphasis added).

Aetna reviewed the medical information and concluded that Braden's injuries did not amount to "Permanent Occupational Restrictions and Limitations" as defined under the Plan. The Court must determine the reasonableness of the decision based on "the facts as known to the administrator at the time the decision was made." *Jett v. Blue Cross*

*& Blue Shield of Ala., Inc*. 890 F.2d 1137, 1139 (11th Cir. 1989). Aetna had Dr. Jackson's September 1, 2011 report which stated that the restrictions were not permanent when it made the decision. Even though there was conflicting evidence in the record, namely Dr. Maser's Worker's Compensation Form suggesting permanent limitations, it does not render the decision unreasonable. An administrator's determination must be upheld if it has a reasonable factual basis, even if the record also contains contrary information. *Slomcenski*, 432 F.3d at 1280 (citing *Jett*, 890 F. 2d at 1140)). Further, "[g]iving more weight to the opinions of some experts than to the opinions of other experts is not an arbitrary or capricious practice." *Id*.

### c. Conflict of Interest

The next inquiry is whether FedEx operated under a conflict of interest in denying Braden's lump sum payment under the LTD plan. A pertinent conflict of interest exists where the ERISA plan administrator both makes eligibility decisions and pays awarded benefits out of its own funds. *Blankenship*, 644 F.3d at 1355. *See also Hert v. Prudential Ins. Co. of Am.*, 650 F. Supp. 2d 1180, 1191 (M.D. Fla. 2009)(where the administrator of the plan also acts as a fiduciary and makes discretionary decisions, all while serving as the insurance company paying the claims out of its own assets, a conflict of interest exists.)

In this case FedEx establishes and maintains the LTD plan to provide for the funding and payment of LTD benefits for its employees. FedEx funds and maintains a trust fund. FedEx's contributions to the fund are irrevocable and cannot inure to the benefit of FedEx. Further FedEx acts as the Claims Administrator while Aetna acts as the Claims Paying Administrator. Aetna, and not FedEx, makes benefit eligibility

determinations for the Plan. Aetna does not fund, administer, or pay claims under the Plan. Therefore, Aetna did not operate under a conflict of interest when it denied Braden's LTD lump sum payment on behalf of FedEx.

### d. Braden's Equitable Estoppel Argument

Braden argues that FedEx is equitably estopped from denying her the lump sum payment. An equitable estoppel argument is only available when (1) the provisions of the plan at issue are ambiguous, and (2) representations are made which constitute an oral interpretation of the ambiguity. *Katz v. Comprehensive Plan of Group Ins.*, 197 F.3d 1084, 1090 (11th Cir. 1999). Braden argues that Sections 3.3(b) and 3.3(c) of the Plan are ambiguous because when the two sections are read together, there are two possible interpretations. FedEx argues that since Section 3.3(b)(6) provides that once a "Covered Employee" is terminated, the "Disability Benefit" payments cease, and therefore Braden was not entitled to a lump sum payment for the remaining 24 months. Braden argues that this section should be interpreted to mean that the *monthly* disability benefits cease, but that it should not affect the employee's entitlement to the lump sum payment.

According to Braden, if FedEx's interpretation stands, then it would mean that no employee with permanent restrictions and limitations who was unable to find another suitable position within the company would ever receive a lump sum payment since FedEx would eventually terminate them and the termination would disqualify the employee from receiving the lump sum payment. However, Section 3.3(c) is specifically limited to Covered Employees who receive LTD benefits and who also have permanent restrictions and limitations, while Section 3.3(b)(6) is not limited in that way. Not all employees receiving LTD benefits have permanent restrictions, since LTD benefits begin

11

once the short term disability benefits expire and the employee continues to suffer from the same disability. *See* Section 3.3(a). Therefore, the language in Section 3.3 of the Plan is not ambiguous and Braden is not entitled to make an estoppel argument.

At some point, it appears that the drafter of the February 26, 2011 letter believed that the medical records showed that Braden had permanent restrictions as well as Aetna's internal notes. FedEx and Aetna argue that neither entity sent or adopted the letter, although it bears FedEx's name. In any event, the Court can only speculate as to what caused Aetna to change its position on whether Braden had permanent restrictions and limitations. The letter was certainly misleading to Braden, but it is not enough to show ambiguity in the Plan language itself.

## *Conclusion*

Based on the administrative record in this case, the Court concludes that although the decision to deny Braden a lump sum payment of the LTD benefits was *de novo* wrong, the plan administrator possessed a reasonable basis for its denial. Therefore, the Court must accept FedEx's benefits decision in this case. The Court decides nothing today about whether the plan administrator's decisions were absolutely correct in reality. They may not have been. But given the deference owed by courts to the discretionary benefits decisions of plan administrators, we cannot conclude on this record that FedEx's benefits decision was unreasonable or arbitrary and capricious.

It is therefore ORDERED AND ADJUDGED that:

1. Plaintiff's Motion for Summary Judgment (Dkt. #25) is DENIED.

2. Defendants' Motion for Summary Judgment (Dkt. #26) is GRANTED.

3. Defendant Aetna Life Insurance Company is dismissed from the case.

4. The Clerk is directed to enter judgment in favor of the Defendant Federal Express Corporation.

5. The Clerk is directed to close this file and all pending motions are denied as moot.

**DONE** and **ORDERED** in Tampa, Florida, this 19th day of November, 2013.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record

S:\Odd\2013\13-cv-535- msj 25, 26.docx